IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONDELL NEWSON, ET-5244,    )
      Petitioner,        )
                        )
           v.             )    Civil Action No. 07-471
                        )
CHARLES ERICKSON, et al.,     )
      Respondents.      )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Rondell Newson for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional issue.

II. Report:

Rondell Newson, an inmate at the State Correctional Institution- Retreat has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Newson is presently serving a life sentence imposed following his conviction, by a jury of second degree murder, criminal conspiracy and carrying a firearm without a license at Nos. CC199911378 and CC200001455 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on April 3, 2001.[1]

---

[1] See: Petition at ¶¶ 1-7.

An appeal was taken to the Superior Court in which the issues presented were:

I. Did the court err in not suppressing the defendant's statement when the police had no probable cause to take him into custody and he was never apprised of his <u>Miranda</u> rights?

II. Did the court err in not severing the cases of the two co-defendants?

III. Did the court err in permitting the detective to violate the redaction order regarding the statements of the co-defendant?

IV. Did the court err in refusing to authorize payment for an expert witness on behalf of this indigent defendant?

V. Did the court err in not addressing the prosecutor's gross misconduct by misrepresenting defense counsel's opening remarks in the prosecutor's closing argument?[2]

On March 17, 2003, the judgment of sentence was affirmed.[3] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the issues presented were:

I. The Superior Court omitted a vital witness's testimony in its justification of the lower court's failure to suppress the petitioner's statement.

II. The Superior Court misapplied the law on severance when it upheld the lower court's denial of severance.

III. The Superior Court did not follow the law of harmless error in minimizing the violation of the redaction order.

IV. The Superior Court misapprehended the law when it held that the lower court did not abuse its discretion in failing to appoint an expert on addiction.

V. The Superior Court misapprehended the meaning of prosecutorial misconduct.[4]

---

[2] See: Exhibit 3 to the answer.

[3] See: Exhibit 4 to the answer.

[4] See: Exhibit 5 to the answer.

2

On December 1, 2003, the petition for allowance of appeal was denied.[5]

Newson filed a timely post-conviction petition which was denied on March 28, 2006.[6] Petitioner's counsel was permitted to withdraw and a pro se appeal was taken to the Superior Court in which the issues presented were:

1. Did the court [commit] error in not suppressing the hearsay confession of co-defendant that was improperly admitted and use[d] as substantive evidence against petitioner?

2. Did the court [commit] error in the ruling that Ronald Johnson['s] testimony would not have been admissible at trial and would not have change[d] the outcome of trial?

3. Did the [court commit] error in not addressing petitioner[']s claim of innocence?[7]

On February 2, 2007, the Superior Court affirmed the denial of post-conviction relief. However, in doing so, the Court concluded that in not filing a statement of issues presented on appeal as required by Pa.R.A.P. 1925(b), the issues which the petitioner sought to raise in the Superior Court were waived and as a result 'we cannot review their merits.'[8] Thus, the Superior Court concluded that it was barred from reaching the merits of the appeal as a result of a procedural default. However, this matter requires further exposition.

It is provided in Rule 1925(b), Pa.R.A.P. that:

[Upon receipt of the notice of appeal] the lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the

---

[5] See: Exhibit 6 to the answer.

[6] See: Exhibit 8 to the answer.

[7] See: Exhibit 11 to the answer.

[8] See; Exhibit 12 to the answer.

trial judge a concise statement of the matters complained of on the appeal no later than 14 days after entry of such order. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of.

In reviewing Newson's appeal, the Superior Court observed that in <u>Commonwealth v. Castillo</u>, 585 Pa. 395 (2005), the Pennsylvania Supreme Court concluded that even if the trial court addresses the issues raised, the failure to file a statement of issues complained about on appeal creates an automatic waiver of those issues. Based on this determination, the Superior Court concluded that it could not review the issues raised on appeal, and affirmed the denial of post-conviction relief on procedural grounds.[9] However, the Superior Court also noted that:

> The PCRA court ordered Appellant to file a concise statement of the matters complained of on appeal within 14 days. Appellant did not file the concise statement but, instead, filed a motion for extension of time to file the statement on June 13, 2006. The PCRA court did not rule on the motion for extension of time, but Appellant did not, at any point thereafter, file a concise statement of matter complained of on appeal.[10]

This waiver is mandatory under Pennsylvania case law where the statement of matters complained about on appeal is not filed, but discretionary where filed untimely. <u>Commonwealth v. Smith</u>, 854 A.2d 597 (Pa.Super.2004). Here, there is no argument that the petitioner failed to file his statement even in an untimely fashion.

In <u>Werts v. Vaughan</u>, 228 F.3d 178, 192 (3d Cir.), cert. denied 532 U.S. 980 (2000) the Court held:

> claims deemed exhausted because of a state procedural bar are procedurally defaulted, and federal courts may not consider the merits, unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to

---

[9] See Exhibit 12 to the answer.

[10] Id.

4

excuse the default."

In the present case, the petitioner apparently did seek an extension of time in which to file his recitation of the matters complained about on appeal, but that request was neither granted nor denied. Thus, it would appear that it is inequitable to impose a waiver on the petitioner since he at least made a timely effort to secure an extension of time in which to comply with the rules.

In seeking relief here, Newson contends he is entitled to relief on the following grounds:

1. The trial court erred in admitting evidence in the form of an unsigned and unrecorded  statement of his co-defendant as well as erred in denying his motion for severance.

2. He is actually innocent of the crime.

3. Counsel was ineffective for failing to raise a claim of after discovered evidence which would have demonstrated his innocence.

4. The trial court erred by refusing to authorize payment for an expert witness on crack and heroin addiction.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v.  30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would

be ineffective or futile that the exhaustion requirement will not be imposed. <u>Preiser v. Rodriguez</u>, <u>supra</u>.; <u>Walker v. Vaughn</u>, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. <u>Carter v. Vaughn</u>, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In <u>Hameen v. Delaware</u>, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in <u>Williams v. Taylor</u> held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a

6

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  The Court in <u>Williams v. Taylor</u> made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it would appear that the petitioner has raised or at least attempted to raise his first, second and fourth issues in the courts of the Commonwealth, and for this reason, they are properly before this Court for consideration. However, his third issue, that counsel was ineffective for failing to raise after discovered evidence has never been presented to the courts of the Commonwealth. In  <u>Coleman v.Thompson</u>, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

No good cause having been demonstrated, the latter claim is procedurally defaulted and not properly before this Court.

The backgrounds to this conviction is set forth in the March 17, 2003 Memorandum of the Superior Court:

> On January 17, 1998, in McKeesport, Pennsylvania, the victim, Damon Alford, was found in the entryway of an apartment building at 428 Olive Street, with multiple gunshot wounds to the head. While at the scene of the crime, the police received information from a neighbor that shortly before the shooting occurred, she observed a man get out of a green GMC Jimmy and walk towards 428 Olive Street. Another woman, who did not identify herself, approached the police and told Detective Regis Kelly that two men named "Pinky" and "Delo" were responsible for the homicide of Alford, and that these men were driving a green GMC Jimmy and could be found in Garfield.

> On January 18, 1998, Detective Kelly and Detective Lee Yingling located a green GMC Jimmy in Garfield. They checked the registration of the vehicle and found

that it was leased to Barry Fiumara ("Fiumara"). Fiumara told the police that he had loaned the car to David Young ("Young") and Michael Medley, Jr., in exchange for crack cocaine, and that they had not returned the car to him. The police put the vehicle under surveillance, and after two individuals entered the car and started to drive away, the police stopped the vehicle. The police found Young driving the car and Newson as the passenger. The police asked Young and Newson to accompany them to the police station for questioning, as the vehicle had been involved in the homicide of the previous day. At the police station, both Young and Newson gave brief statements, denying their involvement in the homicide. Both men were released.

Over a year later, the police obtained information from Michael Semdley, Sr. ("Medley") that two men named Delo and Pinky had been at his house in January 1998, and that he had heard Delo say that he had killed a man in McKeesport. Later, Medley asked Delo why he had shot Alford, and Delo said that Alford was going to shoot him. The police then showed Medley photographs of Young and Newson, and Medley identified them by their street names of Pinky and Delo.

Based on the information provided by Medley, the police arrested Young and Newson. On September 2, 1999, Young gave Detective Kelly a statement in which he indicated that he and Newson planned to rob Alford, and waited in the basement of the apartment building for Alford to arrive. Young stated that he then wanted to leave, so he opened the door to the basement and walked to the front door. As he reached the front door, Alford came in. Newson was coming out of the basement at the same time. Alford reached for a gun, and Young then heard a shot. Young ran from the building and heard two or three more shots. Young and Newson then got in the car and together left the scene.

Prior to trial, the trial court ordered the Commonwealth to redact any references to Newson from Young's statement. Detective Kelly testified at trial concerning young's statement, replacing references to Newson with "the other individual."[11]

Thus, the issues properly before the Court for consideration are the petitioner's allegation that he was denied a fair trial as a result of the introduction into evidence of a statement of his co-defendant, and the trial court's failure to sever the two for trial, and whether fundamental error occurred when the trial court refused to authorize the retention of an expert in substance

_____

[11] See: Exhibit 4 to the answer.

8

addiction.[12] Additionally, the petitioner claims actual innocence and this claim needs to be addressed.

In presenting the matter of the joint trial with a co-defendant who had made a statement implicating the petitioner, Newson argued in the Superior Court:

> The problem with a joint trial in this case is that David Young purportedly made a statement implicating Rondell Newson. The Court did order redaction of Young's statement. However, the jury is not stupid. When Newson is sitting at counsel table with Young it is obvious that the other person referred to was Newson.
>
> Furthermore, in the midst of waiving his right to testify, Young suddenly decided to take the stand...
>
> Young's sudden decision to testify, as well as his utter failure to prepare his alibi defense, spilled over onto Rondell Newson and deprived him of a fair trial. The joint trial unduly prejudiced the Appellant. But for Young's decision to testify, the jury would not have known that the police claimed that Young gave Rondell Newson's name as the shooter...[13]

However, as the trial court observed: "the co-defendant in the instant case [Young] took the stand and denied making a statement inculpating the defendant; thus, as a matter of law, the defendant was not denied his rights under the Sixth Amendment"[14] The trial court also observed that the statement itself was redacted so that it made no reference to the petitioner by name, and that the statement itself was "neither powerfully incriminat[ing of] Newson not lent substantial critical weight to the prosecutor's case."[15]

---

[12] The Commonwealth concedes that the petition has been timely filed (Answer at p.8) but also argues that the claims are procedurally defaulted (Answer pp.9-13).

[13] See: Exhibit 3 to the answer at pp.16-17.

[14] See: Exhibit 2 to the answer at p.7.

[15] Id.

In Bruton v. United States, 391 U.S. 123 (1978), the Court held that the admission of an out of court statement of a defendant who implicated his codefendants, and who did not testify at trial violated the co-defendant's Sixth Amendment confrontation rights. However, in the instant case, unlike the circumstances of Bruton, the statement was redacted to remove the petitioner's name; Young elected to testify at trial and was subject to cross-examination and specifically testified that he had not made any incriminating statements implicating either himself or any other individual (TT.424-425). Thus, his testimony was not conflicting with the petitioner's defense and a violation of the petitioner's Sixth Amendment confrontational rights did not occur. For this reason the determination of the state courts do not conflict with decisions of the Supreme Court and this issue does not provide a basis for relief here.

Another issue which the petitioner raises here is that the trial court improperly denied him the right to call a narcotics expert in his defense at state expense. As a matter of evidentiary concern, this issue implicates state and not federal law, and is not properly before this Court unless a fundamental violation of due process occurs. Estelle v. McGuire, 502 U.S. 62 (1991). No such showing is made here. Rather the overwhelming evidence presented demonstrates petitioner's guilt and further information regarding addiction was irrelevant.

Finally, the petitioner raises the issue of his actual innocence. In support of this claim, the petitioner references the April 11 and 14, 2001 letters to his attorney from Ronald A. Johnson in which Johnson states that he was not present at the crime scene and that he had learned that the homicide was committed by Ray Luca and not either of the defendants.[16] In reviewing these letters, the trial court stated, "... these letters... indicate definitely that Mr. Johnson's testimony

---

[16] See: Attachments to Exhibit 11 to the answer.

would not have been admissible at trial and even if it had been admitted, it would not have changed the outcome of the trial."[17] In addition, from the tone of the letters their credibility is severely suspect since it appears that Mr. Johnson had a motive for involving Luca. Thus, this claim is meritless.

Accordingly, because the issues raised by the petitioner do not implicate any violation of federally protected rights as determined by the United States Supreme Court, it is respectfully recommended that the petition of Rondell Newson for a writ of habeas corpus be dismissed and that a certificate of appealability be denied

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

<div style="margin-left: 50%;">

Respectfully submitted,

s/Robert C. Mitchell,
United States Magistrate Judge
</div>

Entered: June 21, 2007

---

[17] See: Id.

11